889 A.2d 1081 (2006)
382 N.J. Super. 458
STATE of New Jersey, Plaintiff-Respondent,
v.
Brian HAWKINS, Defendant, and
AA Bail Bonds, Inc. and Allegheny Casualty Co., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 2005.
Decided January 27, 2006.
*1082 Richard P. Blender, Paterson, attorney for appellants.
John C. Porto, Cape May County Counsel, attorney for respondent (Barbara Bakley-Marino, Assistant County Counsel, on the brief).
Before Judges STERN, GRALL and LEVY.
The opinion of the court was delivered by
LEVY, P.J.Ch. (temporarily assigned).
AA Bail Bonds, Inc. ("AA") appeals an August 16, 2004 order requiring a 60-percent forfeiture of each of two bails, one for $50,000 and one for $25,000.[1] The *1083 $25,000 bail, posted on August 3, 2003, initially covered only an August 2, 2003 arrest for several related drug charges, including second-degree distribution in violation of N.J.S.A. 2C:35-7.1. On August 5, 2003, however, the same $25,000 posting was apparently permitted to cover a second charge as well, a third-degree aggravated assault in violation of N.J.S.A. 2C:12-1(b)5. That assault charge was initiated on August 4, 2003 based upon an alleged assault by defendant while he was incarcerated awaiting posting of the first bail. He was indicted on the assault charge on October 21, 2003.[2]
On September 14, 2003, while free on AA's $25,000 bond, defendant was issued a summons charging another third-degree assault in violation of N.J.S.A. 2C:12-1(b)7 and requiring him to appear in municipal court on October 8, 2003. Defendant failed to appear. Defendant also failed to appear for a pre-arraignment interview on the indicted assault charge. The State and defendant do not agree on the date that defendant failed to appear or whether the $25,000 bail was forfeited.
AA maintains that defendant failed to appear on November 19, 2003 and that bail was forfeited and a bench warrant issued for his arrest. AA relies upon the January 15, 2004 certification of Assistant Prosecutor Marian R. Ragusa and an attached Promis/Gavel printout filed in support of the State's motion to revoke bail. The printout shows a bench warrant was issued on November 19, 2003 and states as a comment: "AGG ASSAULT ON LEO/BAIL FORFEITED." AA notes that there is no record that the bail was ever reinstated. Ragusa's certification also states that defendant's bail was not reinstated.
The State contends that the failure to appear occurred on November 10, 2003 and that, although a bench warrant was issued, bail was not forfeited. The State relies upon the May 24, 2004 affidavit of Assistant County Counsel Barbara L. Bakley-Marino filed in opposition to a motion to set aside forfeiture.[3] That affidavit, which is not supported by a reference to Promis/Gavel or any other record, simply states: "On November 10, 2003, the defendant failed to appear for a pre-arraignment conference and a bench warrant was issued for his arrest. It does not appear that the bail was forfeited."
Both parties agree that defendant was arrested on December 20, 2003 for his failure to appear in November and the bench warrant was executed. On December 24, 2003, AA posted another bail of $50,000 for the same two charges, that is, the drug charges for which defendant was arrested on August 2, 2003 and the indicted aggravated assault charge.
On January 9, 15 and 16, 2004, an arraignment/status conference was held on that indicted aggravated assault charge, and at the same time there was a predisposition conference on two other pre-indictment charges for drugs and assault. Defendant was present at each one. During the January 9 conference, the judge stated the following:
Okay. Now my concern is bail status. What is a person with three outstanding [criminal] charges doing out on bail[?] It sometimes happens that the Municipal Court Judge has set bail without *1084 knowing that there are other complaints lodged against the defendant. So I would just urge you to review that bail status and if appropriate, in your opinion, file an application....
On January 15, the judge asked whether an application "for at least a change in bail" had been filed and, when advised that it had not, asked the prosecutor to "formally do that." The State filed a motion to revoke or increase bail that same day. AA did not receive notice of the motion.
On January 16, a new attorney, who had received the file only an hour before the proceeding, represented defendant. The judge again expressed concern about defendant's bail status, given defendant's prior failures to appear and the fact that he faced three separate charges, at least two of which were for assaults. During the discussion, the court stated:
[B]ut something's got to give here in terms of the defendant's continued presence on the street. We can't have somebody out there who has (indiscernible) of charges, based on the condition of bail when a person is supposed to stay out of trouble, and obviously that has not occurred.
The court further noted that a "State Prison offer of some significant length" had been made by the State.
Notwithstanding those statements, the court did not decide the State's motion to revoke bail. Instead, in order to give defendant's new attorney time to prepare, the judge adjourned the matter to January 23, stating that he would have addressed bail if defendant had not been represented by a new lawyer. AA was not notified that the court, during the three days of arraignment conferences, perceived there to be an increased risk of flight, that there was a prior failure by defendant to appear in November or that an application to revoke bail had been filed by the State. AA did not learn of defendant's November failure to appear or the State's January 15 motion to revoke bail until May 2004 when it received that information in a certification filed in opposition to its motion to set aside the forfeitures.
After his failure to appear on January 23, defendant remained a fugitive for approximately two months, until his arrest by local police on March 26, 2004[4], just hours before AA investigators, acting on a tip, arrived at the residence at which the arrest took place. During the time defendant was a fugitive, AA maintained that it spent approximately sixty man-hours pursuing him, using investigators; staking out his home, the homes of indemnitors and places he frequented; enlisting the aid of community informants; and contacting parties with whom defendant had relations.
On April 12, 2004, the court entered two default judgments against defendant and AA, one for $25,000 and the second for $50,000, based upon the two recognizances that had been forfeited on January 23, 2004. The judgments noted that AA had been notified but failed to object within seventy-five days as required by R. 3:26-6(c). On May 5, 2004, AA filed a motion to set aside the forfeitures and judgments.
In support of its motion, AA argued that it did not receive notice of defendant's failure to appear in November nor did it receive notice of forfeiture of the $25,000 recognizance, as required by R. 3:26-6(a). It also argued that statements made by the court and the State at the three conferences "scared this defendant off." At oral argument on the motion, AA's counsel maintained that the State and the court *1085 increased the risk of flight by emphasizing to defendant "a plea offer that involves jail time, a lot of jail time, and trumpeting it up in front of him in a courtroom for two, three days." AA notes that, although the court invited a motion to revoke bail, no notice of that motion was given to AA.
In addition, AA maintained that it fulfilled its obligations to supervise and pursue defendant, noting that upon receipt of notices of forfeiture generated following defendant's failure to appear on January 23, Richard Sparano, the owner of AA, instructed investigators to locate defendant. During that effort, the investigators encountered defendant once, but he escaped by running into a wooded area. AA also argued that the company made attempts to supervise defendant, having investigators speak to him on several occasions about the general status of the case and an outstanding balance owed to the company.
In deciding the motion, the court concluded that the statements of the court during the arraignment/status conference did not contribute to defendant's flight. With respect to AA's actions to supervise defendant, the court found that there were no records to substantiate testimony that AA personnel had direct contact with defendant once a month. With respect to AA's efforts to find defendant once he became a fugitive, the court found that there were no records to corroborate that AA had spent sixty man-hours pursuing him. The court noted that AA agent Leonard Corbin acknowledged that he visited defendant's residence only once; that he only had three contacts with defendant, two in person and one by telephone; and that he did not produce notes he said he kept documenting the 60 man-hours alleged to have been spent in pursuit of defendant.
The court also found "vague . . . at best" Corbin's testimony regarding his sighting of defendant and defendant's immediate flight into the woods. The court concluded that AA undertook relatively few efforts to supervise defendant prior to December, and that once the $50,000 bail was posted in December, AA did virtually nothing to supervise. Citing State v. Hyers, 122 N.J.Super. 177, 299 A.2d 748 (App.Div. 1973), the court reviewed the factors to be considered in determining whether a bail forfeiture should be set aside in whole or in part and concluded that a partial forfeiture was called for.
Relying on the Remittitur Guidelines for Superior and Municipal Courts issued as Attachment # 4 to Directive # 13-03[5] by the Administrative Office of the Courts, the court determined that a remission of between ten and forty percent was appropriate.[6] That determination was based upon the fact that defendant was not a fugitive when the remission motion was brought, but that defendant had committed a new crime, possession of controlled dangerous substances, while a fugitive. Then, based upon findings that defendant was at large for less than six months, that AA had done only minimal supervision with respect to the $25,000 bail, and that there were "some immediate substantial efforts to recapture the defendant," the court determined AA was entitled to a forty percent remission of the $25,000 bail. The court also determined that a forty *1086 percent remission should apply to the $50,000 bail, because, although there was virtually no supervision after that bail was posted, the substantial efforts at recapture should be viewed as applicable to that bail as well.
Initially, we conclude that the court's statements on the record in front of defendant urging the State to bring a motion to revoke bail are not a basis for discharging the surety. The court must be free to reconsider bail at any time that it becomes appropriate. Since bail may be forfeited for breach of a condition other than nonappearance, State v. Korecky, 169 N.J. 364, 375, 777 A.2d 927 (2001), it is clear that an application for revocation of bail may need to be made in the presence of defendant in open court and the court must be free to address it. That defendant might violate a condition of bail resulting in a motion for revocation being heard in his presence is a business risk of the occupation of surety. "Implicit [in the status of commercial bondsmen] and relevant to this appeal, is a recognition of the rights and risks that attend that occupation." Id. at 377, 777 A.2d 927. Given these considerations, we reject AA's argument that forfeiture should be set aside because of increased risks caused by the statements made by the court.
On the other hand, we conclude that reversal is mandated because AA was not advised of defendant's failure to appear in November, an event that required forfeiture of the recognizance and notice to AA. Although the court made no specific findings with respect to the failure to notify AA of defendant's nonappearance in November, the fact that AA did not receive such notice is not in dispute. The parties do dispute whether the $25,000 recognizance was forfeited as a result of that failure to appear and, if so, whether it was reinstated. Those disputes, however, are not critical to our decision because there is no dispute that there was no appearance and no notice to the surety.
While "the decision to remit bail and the amount of the remission lies within the equitable discretion of the court to be exercised in the public interest," State v. de la Hoya, 359 N.J.Super. 194, 198, 819 A.2d 467 (App.Div.2003), the exercise of that discretion must have sound factual and legal underpinnings. State v. Madan, 366 N.J.Super. 98, 110, 840 A.2d 874 (App. Div.2004). In this case, we conclude that failure to provide notice to AA of defendant's failure to appear in November requires reversal as a matter of law.

R. 3:26-6(a)states, in pertinent part:
Declaration; Notice. Upon breach of a condition of a recognizance, the court on its own motion shall order forfeiture of the bail, and the criminal division manager shall forthwith send notice of the forfeiture to the county counsel, the defendant, and the surety.[7]
Clearly, defendant's failure to appear in November was a breach of the conditions of the recognizance. The rule, therefore, required the court to issue an order of forfeiture and for notice of that forfeiture to be sent to AA. The notice, however, was never sent.
Had AA been given notice of defendant's failure to appear and any resulting forfeiture, it could have sought to surrender defendant and moved for exoneration *1087 pursuant to R. 3:26-7. A surety has a "good faith duty to the defendant to permit that defendant to remain free so long as the contractual undertaking between the defendant and the surety remains unchanged and compliance with the conditions of the bond occurs." State v. Ceylan, 352 N.J.Super. 139, 143, 799 A.2d 685 (App.Div.2002). Here, as noted above, defendant breached those conditions. Therefore, AA no longer had a duty to permit defendant to remain free.
The State argues that had AA exercised due diligence when it posted the additional $50,000 bond, it would have realized, from pending contempt charges, that defendant had failed to appear in November. On the bail recognizance form that AA's representative signed upon posting the $50,000 bail, in a box labeled "Charges" a hand-written notation stated: N.J.S.A. 2C:29-9. Even if AA should have known N.J.S.A. 2C:29-9 was a contempt charge, the fact remains that AA was entitled to notice in November, possibly as early as November 10, and that it did not receive it at that time. What it should have known in late December does not negate the fact that it was entitled to notice and an opportunity to move for exoneration in November or decline to post bail in December. It is reasonable to conclude that it would not have subsequently posted the additional $50,000 bond, half of which secured the same charge for which defendant failed to appear in November.
Therefore, AA must be relieved of its obligation on both instruments.[8]
Reversed and remanded.
NOTES
[1] Although the only bonds at issue are the $25,000 and $50,000 bonds posted by AA, during the proceeding that resulted in the order being appealed, AA's counsel stated that defendant had actually been released on a total of $100,000 in posted bonds, another $25,000 bond having been posted and never forfeited.
[2] Defendant was not indicted on the drug charges at any time relevant to the proceedings at issue in this case.
[3] The affidavit is incorrectly captioned as relating to a motion to set aside bail.
[4] Police were apparently engaged in a "sweep" searching for drug offenders when they arrested defendant. As a result, in addition to being held as a fugitive based on his failure to appear on January 23, defendant was charged with a new drug offense.
[5] Directive # 13-03 Attachment # 4 was superseded by Directive # 13-04 Attachment F on November 17, 2004. However, Attachment F is identical to Attachment # 4.
[6] The guidelines should be consulted and used as a starting point in considering applications for remission. But "subsequent case law and all factors relevant to the particular case" must also be considered. State v. Harris, 382 N.J.Super. 67, 72, 887 A.2d 728 (App. Div.2005).
[7] This rule has since been amended. It currently reads as follows:

Declaration; Notice. Upon breach of a condition of recognizance, the court on its own motion shall order forfeiture of the bail, and the finance division manager shall forthwith send notice of the forfeiture, by ordinary mail, to county counsel, the defendant, and any surety or insurer, bail agent or agency whose names appear on the bail recognizance.
[8] Although the resolution of the factual issue is not necessary for this appeal, it should be noted that, if the $25,000 bail was reinstated, that, too, was done without notice to AA. This would provide an additional basis for exonerating AA. A court does "not have the authority to effect a reinstatement of the bail bond without the consent of the surety." State v. Clayton, 361 N.J.Super. 388, 395, 825 A.2d 1155 (App.Div.2003). While it is unclear from the record whether the $25,000 bail was reinstated, it is clear that the judgments that AA seeks to set aside, including the one for $25,000, were based upon two recognizances that were forfeited on January 23, 2004. Obviously, if the $25,000 bond had been forfeited in November, it could not have been forfeited again in December without first having been reinstated.