61 A.3d 174

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. TYRONE STEELE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 15, 2013—Decided March 14, 2013.

Before Judges MESSANO, LIHOTZ and OSTRER.

*William J. Rohr*, Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora*, Public Defender, attorney; *Mr. Rohr*, on the brief).

*Marc A. Festa*, Senior Assistant Prosecutor, argued the cause for respondent (*Camelia M. Valdes*, Passaic County Prosecutor, attorney; *Mr. Festa*, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

On leave granted, defendant Tyrone Steele appeals from the trial court's October 19, 2012, order denying his motion to reduce bail totaling $200,000, of which $150,000 must be cash, on two indictments charging fourth-degree offenses. We modify the bail set by the court and remand.

I.

Defendant seeks to reduce bail of $150,000, cash only, on Passaic County indictment No. 12–07–0570, which charges him with six counts of lewdness, *N.J.S.A.* 2C:14–4b(1). The incidents allegedly occurred in the City of Passaic three times in June 2011, and in November 2011, February 2012 and March 2012. Defendant also seeks to reduce bail of $50,000, no ten-percent option, on a June 2012 Passaic County indictment, No. 12–06–0481, which

charges that on April 5, 2012, defendant violated a condition of community supervision for life (CSL), a fourth-degree crime, *N.J.S.A.* 2C:43–6.4d, by failing to report two arrests to his parole officer, and to refrain from initiating contact with a minor. The two arrests were the March 23, 2012, arrest on the lewdness charges, and a March 24, 2012, arrest on theft and related charges.

Defendant is a forty-two-year-old convicted sex-offender. In connection with two separate indictments in Bergen and Passaic counties, in 1997, he pleaded guilty to first-degree kidnapping, robbery, and attempted aggravated sexual assault and was sentenced to an aggregate twenty-five-year term, with twelve-and-a-half years of parole ineligibility. He was released from prison on December 2, 2010. He is no longer subject to post-release parole, but is subject to CSL and Megan's Law. Defendant also pleaded guilty in 1994 to a charge of disorderly conduct, after a grand jury no-billed a charge of unlawful possession of a rifle.

When charged with the offenses related to the challenged bails, defendant had been released on bail in connection with two previous alleged violations of his community supervision. Defendant was charged in July and December 2011 Passaic County indictments, Nos. 11–07–0677 and 11–12–0994, in connection with allegations he entered an online computer networking site on April 25, 2011, and September 20, 2011. Bail was set at $7500, ten-percent option, on the July 2011 indictment, and $10,000, no ten-percent option, on the December 2011 indictment.

Bail was initially set on the lewdness charges at $35,000, with a ten-percent option, which defendant posted on the day he was arrested, March 23, 2012. Bail was initially set at $35,000, no ten-percent, on the theft charges, which defendant posted on March 24, 2012, the day he was arrested. A few days later, parole officers placed defendant on an electronic monitoring program, attached a monitoring bracelet to his ankle, and required that he relocate from his residential neighborhood in Passaic to a shelter in Newark. After he was arrested on April 5, 2012, on the third

alleged violation of community supervision—in connection with his failure to report his March 23 and 24 arrests—bail was set by a municipal court judge at $50,000, no ten-percent.

Upon what we presume was defendant's initial bail review before Superior Court, *Rule* 3:26–2(c), also on April 5, the court maintained defendant's $50,000 no-ten-percent bail on the CSL charge, but increased bail on the lewdness charges, from the $35,000 ten percent, already posted, to $150,000, cash only.

Shortly thereafter, the prosecutor downgraded the theft charges, which were remanded to municipal court for disposition. The Superior Court judge reduced bail to released-on-own recognizance (ROR), although defendant had already obtained a $35,000 bond on those charges. On August 2, 2012, defendant entered a guilty plea to the downgraded theft and motor vehicle offenses. He was fined and received thirty-eight days jail credit. His driving privileges were also revoked for six months.

When defendant was arraigned on August 28, 2012, on the lewdness indictment and the new CSL indictment, the prosecutor disclosed the State's plea offer. The offer called for defendant to plead to two counts of lewdness, and to the three CSL indictments; in return, the State would recommend two concurrent terms of eighteen months on the lewdness charges, consecutive to three concurrent eighteen-month terms on the CSL charges.

The court also heard extensive argument on defendant's motion to reduce bail, and issued its oral decision on August 29, 2012, denying the motion. Defendant submitted a consent order to the court on October 19, 2012, memorializing the court's decision. Defendant then sought leave to appeal, which we granted. We invited the trial court judge to supplement her decision pursuant to *Rule* 2:5–1(b), which she did on December 5, 2012. We focus primarily on the court's amplified decision.

In deciding to maintain the challenged bails, the court relied on its analysis of the enumerated bail factors set forth in *Rule* 3:26–1,

but also considered defendant's dangerousness to the community. *Rule* 3:26–1 states:

The factors to be considered in setting bail are: (1) the seriousness of the crime charged against defendant, the apparent likelihood of conviction, and the extent of the punishment prescribed by the Legislature; (2) defendant's criminal record, if any, and previous record on bail, if any; (3) defendant's reputation, and mental condition; (4) the length of defendant's residence in the community; (5) defendant's family ties and relationships; (6) defendant's employment status, record of employment, and financial condition; (7) the identity of responsible members of the community who would vouch for defendant's reliability; (8) any other factors indicating defendant's mode of life, or ties to the community or bearing on the risk of failure to appear, and, particularly, the general policy against unnecessary sureties and detention.

With regard to factor one, the court noted that, notwithstanding the State's plea offer of an aggregate three-year term, defendant faced the potential of three CSL convictions, and six lewdness convictions. If all convictions were sentenced consecutively, he faced a potential aggregate term of thirteen-and-a-half years. Although the judge acknowledged that such a sentence was unlikely, she stated it was plausible defendant's sentence would substantially exceed three years if convicted of all charges. The court noted defendant also had a theft charge pending in Wanaque Borough, which presented the risk of another six months of incarceration. The judge also considered defendant's dangerousness to the community as a factor likely to result in a "number of consecutive sentences."

The court deemed the likelihood of conviction on the lewdness charges to be strong. The judge noted the State had a video recording depicting defendant naked, except for shoes. He was manipulating or holding his penis while walking in the side yard of his former Passaic home, where he would be visible to passersby when children were likely to be returning home from school. Defendant had also allegedly admitted to an officer that he had walked naked in his yard between five and ten times, he did not know why he did it, and he acknowledged he needed help.

The court also considered defense counsel's arguments that the proofs of the third CSL violation were not strong, at least as to the failure to report the lewdness arrest, because defendant was

actually arrested on those charges while in parole offices. She noted the State maintained defendant still failed to report his arrests. The court addressed the first two CSL charges—although not the subject of the bail reduction motion—stating they were "extremely serious" as people who had "no idea ... of his horrendous prior record" might respond to him on the internet.

Regarding factor two, the court agreed that defendant's record on bail had been one of compliance. He had appeared regularly, and without exception, at numerous status conferences on the first two CSL indictments. "[W]hile he has appeared on a number of occasions, and I don't dispute that, looking at the totality of what faces him now, I would be very, very concerned about risk of flight." The court also repeatedly referred to defendant's prior convictions for first-degree crimes.

Regarding defendant's reputation and mental condition—factor three—the court noted defendant's prior term of incarceration, his multiple arrests since release, and his statement that he did not know why he walked in his yard naked and needed help. "[T]his gives me enormous, enormous concern about [the] safety of the community and the mental condition of this defendant."

The court indicated that defendant's community, family, and employment-related ties, addressed in factors four through seven, were not strong. Parole officers required defendant to vacate his home in Passaic, where he allegedly committed the lewdness offenses, because of his proximity to children. He then relocated to a shelter in Newark. Defendant had presented no information about family ties, or friends or family members who would vouch for his reputation or reliability. No other members of the community had vouched for his reliability.

The court acknowledged defendant had been employed driving a truck during late-night hours for a company that retrieved cooking oil from restaurants. His employer purportedly was willing to rehire him if released. However, the court did not address, as defendant did not present, any other evidence of defendant's

financial condition or property ownership, which might moor him to the community.

The court also considered the threat defendant posed to the safety of the community. As we noted, in analyzing defendant's mental condition, the court expressed "enormous concern" about the community's safety. The court acknowledged its authority to impose non-financial conditions on bail to protect the community under *Rule* 3:26–1(a), but apparently found they would be ineffective:

> This defendant now lives in a shelter. And I know he can talk about reporting to an officer, we can talk about wearing an electronic bracelet. But, the kind of behavior he is charged with is not protected against by wearing a bracelet or reporting to an officer.
>
> So, certainly, and I can't stress enough, he's presumed innocent. I am very, very concerned about this defendant.

In its initial decision in August 2012, the court also expressed concern about safety to the community, stating, "I am extremely concerned about risk of flight, because he does face an enormous custodial exposure. And I am also concerned about the safety of the community."

The court also found good cause for exceeding the $2500 limit on bail for fourth-degree offenses set forth in *N.J.S.A.* 2C:6–1. The statute states:

> No person charged with a crime of the fourth degree ... shall be required to deposit bail in an amount exceeding $2,500.00, unless the court finds that the person presents a serious threat to the physical safety of potential evidence or of persons involved in circumstances surrounding the alleged offense or unless the court finds bail of that amount will not reasonably assure the appearance of the defendant as required. The court may for good cause shown impose a higher bail; the court shall specifically place on the record its reasons for imposing bail in an amount exceeding $2,500.00.
>
> [*N.J.S.A.* 2C:6–1.]

In finding good cause, the court noted that defendant's fourth-degree charges were more serious than others under the Code. The court also observed that $2500 was a more significant sum when *N.J.S.A.* 2C:6–1 was enacted as *L.* 1983, *c.* 423, § 1.

Although the judge recognized that the bails were high, she stated, "[I]f a defendant cannot make bail, that does not lead to

the automatic conclusion that bail is unfair." The court held the bails were warranted in view of the application of the considered bail factors.

The court concluded:

In sum, I recognize that the bails that are here, the $50,000 bail and the $150,000 cash bail, are high. Particularly, the $150,000 cash bail. Again, I believe this is a defendant with a serious concern about risk of flight. No information about family ties. He is living in a shelter at this point. I believe this defendant, based upon the Prosecutor's proffer about what he allegedly said on the video, about he doesn't know why he's in the back yard nude, and he needs help, is a person whose mental stability is extremely, extremely of concern to this [c]ourt.

Defendant appeals and presents the following point for our consideration:

THE COURT BELOW ABUSED ITS DISCRETION IN DENYING DEFEN-DANT'S MOTION TO REDUCE THE BAILS BECAUSE THE $50,000 NO TEN PERCENT OPTION BAIL SET ON THE FOURTH DEGREE CHARGE IN INDICTMENT NO. 12-06-0481-I AND THE $150,000 CASH ONLY BAIL SET ON THE SIX FOURTH DEGREE CHARGES IN INDICTMENT NO. 12-07-0570-I CONSTI[ ]TUTE PREVENTIVE DETENTION AND VIOLATE ART. I, PAR. 11 OF THE NEW JERSEY CONSTITUTION WHICH MANDATES THAT "ALL PERSONS SHALL, BEFORE CONVICTION, BE BAILABLE BY SUFFICIENT SURETIES ... [.]"

## II.

### A.

We begin with our standard of review. The setting of bail is vested in the sound discretion of the trial court, and we consequently review the trial court's decision for an abuse of discretion. *See State v. Fajardo–Santos,* 199 *N.J.* 520, 531, 533–34, 973 *A.*2d 933 (2009) (noting that "judges engage in a fact-sensitive analysis in setting bail" and affirming trial court's exercise of discretion in increasing monetary amount of bail in light of defendant's immigration status and risk of flight); *State v. Korecky,* 169 *N.J.* 364, 373, 777 *A.*2d 927 (2001) (stating that appellate court reviews trial court's imposition of non-monetary conditions of bail for an abuse of discretion). While the "abuse of discretion standard defies precise definition," we may find an abuse of discretion when a decision "rest[s] on an impermissible

basis" or was "based upon a consideration of irrelevant or inappropriate factors." *Flagg v. Essex Cnty. Prosecutor*, 171 *N.J.* 561, 571, 796 *A.*2d 182 (2002) (citations and quotations omitted).

### B.

We turn to review basic principles governing bail. Given the trial court's expressed concern for the safety of the community, we address the manner in which a court may consider that factor in setting bail.

■ The right to pre-conviction bail is enshrined in our Constitution. "All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." *N.J. Const.* art. I, ¶ 11. Accused persons shall also be free of excessive bails. *N.J. Const.* art. I, ¶ 12. The right to pre-trial bail is a "fundamental one," *State v. Johnson*, 61 *N.J.* 351, 355, 294 *A.*2d 245 (1972), "founded in freedom and human dignity, reflected in the everpresent presumption of innocence[.]" *Id.* at 360, 294 *A.*2d 245.

■ The Constitution's reference to "sufficient sureties" is designed to assure a defendant's appearance. The amount of the bond must be set at such amount "as in the judgment of the trial court under the circumstances of the case will insure his appearance at the trial." *Id.* at 359–60, 294 *A.*2d 245; *see also Fajardo–Santos, supra*, 199 *N.J.* at 531, 973 *A.*2d 933 ("The amount of bail can ... be increased, reduced, or left alone, consistent with the overriding aim of ensuring a defendant's presence at trial."); *State v. Wright*, 410 *N.J.Super.* 142, 152 n. 2, 980 *A.*2d 17 (Law Div.2009) (reviewing other states' common construction of "sufficient sureties" to mean "sufficient to assure a defendant's appearance").

■ Money bail may not be used to protect the community by preventing release. The Johnson Court vindicated the right to pre-conviction bail of a defendant charged with murder, who no longer faced the death penalty. *Supra*, 61 *N.J.* at 365, 294 *A.*2d

245. The court cautioned that even a defendant charged with such a serious crime was entitled to pre-trial release upon a bail that was not excessive:

[A]n excessive bail requirement should not be utilized as a means of confining the accused until trial. The amount of bail required in a given case, where serious offenses, such as murder, are involved, is not an easy decision. But in reaching it, the constitutional right to bail and the presumption of innocence cannot be overlooked.

[*Id.* at 365, 294 A.2d 245.]

The Court has reaffirmed this basic principle. " 'The sole purpose of monetary conditions is to assure the defendant's appearance.' " *Korecky, supra,* 169 *N.J.* at 375, 777 *A.*2d 927 (quoting ABA Standards for Criminal Justice, Pretrial Release Standard, 10–5–3(b) (2d ed. 1988) (*ABA Standards* )). " 'Monetary conditions should not be set to punish or frighten the defendant, to placate public opinion, or to prevent anticipated criminal conduct.' " *Id.* at 376, 777 *A.*2d 927 (quoting *ABA Standards, supra,* 10–5–3(b)).

Rather, to address concerns about community safety, the court may resort to reasonable non-monetary conditions. The court rule expressly provides, "The court may also impose terms or conditions appropriate to release including conditions necessary to protect persons in the community." *R.* 3:26–1(a). The rule's drafters distinguished between the role of monetary and non-monetary conditions. "[T]he Committee recommends that the rule be amended to make it clear that, although the court may not consider protection of persons in the community when deciding the amount of bail it establishes, the court may consider this factor when setting conditions of bail. . . ." *Report of the Supreme Court Committee on Criminal Practice 1996–1998 Term* 37 (Jan.1998).

Our laws expressly authorize imposition of bail conditions to protect the community when persons are charged with a crime constituting domestic violence, *N.J.S.A.* 2C:25–26a, certain sex offenses, *N.J.S.A.* 2C:14–12 (Nicole's Law), and certain drug offenses, *N.J.S.A.* 2C:35–5.7 (Drug Offender Restraining Order Act of 1999). *See also N.J.S.A.* 2C:35–5.5d (stating that one goal of

drug offender restraining order, which may be imposed as a bail condition, is to protect the public from drug offenders).

While our Court has stated that "[o]ur bail system should not seek to guarantee the behavior of a defendant while he or she is out on bail," *Korecky, supra,* 169 *N.J.* at 375, 777 *A.*2d 927, the Court has acknowledged that "[u]sed with caution ... conduct-related conditions may be appropriate." *Ibid.* The Court in *Johnson* likewise observed "imposition of conditions on pretrial bail liberty is a matter for the discretion of the trial courts," and that "discretion must be exercised reasonably, having mind that the primary purpose of bail ... is to insure presence of the accused at trial, and that the constitutional right to bail should not be unduly burdened." *Johnson, supra,* 61 *N.J.* at 364, 294 *A.*2d 245. Although there was no specific dispute before the *Johnson* Court involving non-monetary conditions, the Court nonetheless reviewed a broad array of potential conditions, including requirements that an alleged drug offender attend addiction treatment, or that an accused live in a supervised residence. *Id.* at 363 n. 7, 294 *A.*2d 245.

Returning to the setting of monetary conditions of release, we note that our courts are guided by bail schedules to promote uniformity. The schedules suggest ranges of bail for specific offenses. The schedules reflect that not all crimes of the same degree are necessarily treated the same. For example, the bail range for second-degree manslaughter, *N.J.S.A.* 2C:11–4b, is $100,000 to $200,000; second-degree sexual assault, *N.J.S.A.* 2C:14–2b, –2c(1) to (4), is $50,000 to $200,000; second-degree luring a child, *N.J.S.A.* 2C:13–6, is $50,000 to $100,000; and second-degree terroristic threats, *N.J.S.A.* 2C:12–3a, –3b, is $25,000 to $50,000. Judges are directed to use the schedules only as guidelines:

> It should be emphasized that these bail schedules contain general bail ranges that are meant to be advisory in nature. Each case is fact sensitive. Bail must not be assessed solely by determining the degree of the charged offense, since many crimes within the same degree are significantly different with respect to the

seriousness of the criminal conduct, the harm to the victim, and the danger to the community.

[*See Administrative Directive* # 9–2005 (May 12, 2005).]

In determining the appropriate monetary bail, *Rule* 3:26–1(a) includes the seven specific factors we referenced above, plus any other factors "indicating defendant's mode of life, or ties to the community or bearing on the risk of failure to appear, and, particularly, the general policy against unnecessary sureties and detention." Those factors are drawn from those that the Court set forth in *Johnson, supra,* 61 *N.J.* at 364–65, 294 *A.*2d 245.

The Legislature has also created certain presumptive levels of monetary bail—setting a presumptive maximum bail for minor offenses, and requiring all-cash bail for certain serious offenses. We address these in turn.

As noted, the Legislature limited bail on fourth-degree crimes and lesser offenses to $2500, unless the defendant poses "a serious threat to the physical safety of potential evidence or of persons involved in circumstances surrounding the alleged offense," or a higher bail is necessary to assure the defendant's appearance. *N.J.S.A.* 2C:6–1. The court may for "good cause shown" impose a bail over $2500. *Ibid.*

The provision was enacted in January 1984 to relieve prison overcrowding in county jails, which housed many defendants "charged with minor, nonviolent offenses . . . unable to make bail." *Statement to Senate Bill No. 1461* (June 3, 1982); *see, e.g., Union Cnty. Jail Inmates v. Di Buono,* 713 *F.*2d 984, 986 n. 2 (3d Cir.1983) (noting that fifty-seven percent of Union County's over-crowded jail population in February 1982 consisted of pre-trial detainees), *cert. denied sub nom., Di Buono v. Fauver,* 465 *U.S.* 1102, 104 *S.Ct.* 1600, 80 *L.Ed.*2d 130 (1984). At the time, there were no statewide guidelines on bail, and the amount of bail for such minor offense varied widely.[1]

---

[1] The first statewide guidelines, addressing minor offenses, were adopted shortly thereafter pursuant to legislative mandate. *See L.* 1985, *c.* 70, § 8 ("The

 *N.J.S.A.* 2C:6–1 does not authorize bail over $2500 to protect the general community. Such a provision was included in the original legislation, but deleted in the amendment process, and replaced by a provision relating to threats to evidence, witnesses and victims. *Compare Senate Bill No. 1461* (introduced June 3, 1982) (imposing a $2500 ceiling unless the defendant "presents a serious threat to the physical safety of persons or the property in the community"), *with Senate Bill No. 1461* (third reprint) (Nov. 21, 1983) (referring to "serious threat to the physical safety of potential evidence or of persons involved in circumstances surrounding the alleged offense"). However, even the latter requirement must be applied consistently with the constitutional mandate that the amount of pre-conviction monetary bail shall be set at a level sufficient to assure a defendant's appearance. *See State v. Fortin,* 198 *N.J.* 619, 631, 969 *A.*2d 1133 (2009) (stating that the court "should interpret . . . statute in a manner that would avoid constitutional infirmities, if [it] . . . fairly can do so").

Also, consistent with constitutional parameters, we interpret the provision allowing a bail higher than $2500 for "good cause shown," to import the factors identified in *Johnson, supra,* and codified in *Rule* 3:26–1(a)(1) to (8).[2] These include, among others, the seriousness of the crime charged, the likelihood of conviction, and the potential punishment; as we have discussed, crimes of the

---

Administrative Office of the Courts shall promulgate a bail schedule for all offenses, other than crimes. . . . "), codified, as amended by *L.* 1991, *c.* 305, § 5, at *N.J.S.A.* 2A:161A–8c; *Memorandum to Municipal Court Judges From Robert D. Lipscher,* "Bail Guidelines and Schedule for Non–Indictable Offenses" (May 29, 1985). Guidelines covering crimes were first issued in 2005, following a recommendation of the Conference of Criminal Presiding Judges, which had considered "the consistency or inconsistency of bail setting within a vicinage and among vicinages[.]" *Conference of Criminal Presiding Judges Subcommittee Report on Bail Practices* at 2 (October 20, 2004) (Conference Report); Directive # 9–2005 (referring to Conference Report recommendations).

[2] The "good cause" provision was added at the end of the amendment process. *See* Assembly Judiciary, Law, Public Safety and Defense Committee, *Statement to Senate Bill No. 1461* (Oct. 11, 1983).

same degree may vary in seriousness. A court, upon considering those factors, may determine good cause to impose a bail at a specific amount over $2500 "to ensure [his or her] presence in court when required." *R.* 3:26–1(a). In sum, *N.J.S.A.* 2C:6–1 does not impose an impervious ceiling on bails for minor offenses. Rather, like the guidelines that followed, it may be exceeded upon the court's consideration of appropriate bail factors.

The bail statutes also establish presumptions for the imposition of all-cash bail under certain circumstances in which a defendant is charged with a "crime with bail restrictions," which is defined to include seventeen identified crimes, including murder, *N.J.S.A.* 2C:11–3, manslaughter, *N.J.S.A.* 2C:11–4, kidnapping, *N.J.S.A.* 2C:13–1, sexual assault, *N.J.S.A.* 2C:14–2, burglary, *N.J.S.A.* 2C:18–2, endangering the welfare of children, *N.J.S.A.* 2C:24–4, and escape, *N.J.S.A.* 2C:29–5, as well as any first or second-degree drug-related crime, and crimes of domestic violence where the defendant was already subject to a restraining order. *N.J.S.A.* 2A:162–12a and –12b. Thus, had defendant in this case been charged with a crime with bail restrictions, there would have been a statutory presumption of an all-cash bail both because of his prior convictions, *N.J.S.A.* 2A:162–12c(2) and (3), and because he has two or more indictable cases pending.

Finally, we observe there is a presumption in favor of a ten-percent option, in lieu of a bond, for certain offenses that are not crimes with bail restrictions. *See R.* 3:26–4(g); *R.* 7:4–3(g); *see also N.J.S.A.* 2A:162–12 (defining crimes with bail restrictions). The State bears the burden to establish a basis for the court dispensing with the ten-percent option. *State v. Casavina,* 163 *N.J.Super.* 27, 31, 394 *A.*2d 142 (App.Div.1978) ("[T]he [ten-percent program] is presumed to be available to all defendants. The burden of proving grounds for exclusion by a preponderance of the evidence rests with the State.").

### III.

Applying these principles, we are convinced the monetary bail set by the trial court is excessive and reflects an inappropriate

consideration of the risk defendant will re-offend, not as a factor affecting his risk of flight, but as a factor affecting community safety. The court addressed defendant's mental condition, his professed inability to understand or resist walking around his property naked, and his prior record of violent crime. In setting bail, the court expressly stated that it was concerned not only about risk of flight but also about the "safety of the community." As we have discussed, the court may not set a monetary condition of bail to protect the community by assuring defendant's pre-trial detention.

Indeed, but for the likelihood of defendant's detention, it is unclear how the high cash bail directly promotes safety. Were defendant actually able to post the high cash bail, his subsequent arrest on another charge would not subject his posted bail to the deterrent risk of forfeiture; only a failure to appear would. On the other hand, violation of a non-monetary condition of bail designed to protect the community may trigger forfeiture, *see Korecky, supra,* 169 *N.J.* at 377–79, 777 *A.*2d 927, and, conceivably, revocation of bail. *Id.* at 384, 777 *A.*2d 927 (referring to the court's " 'inherent power to *confine* the defendant' " to assure the integrity of the court's process if threatened by a defendant's intimidation of witnesses, jurors, prosecutors, or court officers) (quoting 3 Wayne R. LaFave, *Criminal Procedure* § 12.3(g) at 790 (2d ed.1999)).

We concur with the court that there was good cause to exceed the statutory limit of $2500 for fourth-degree crimes. The circumstances here justified a higher bail to reasonably assure defendant's appearance. Generally, increased sentencing exposure creates increased risk of flight. The court noted that defendant faced exposure to sentences significantly longer than those typically imposed on fourth-degree offenders. The State's plea offer contemplated a sentence in the third-degree range. While the "worst case" of completely consecutive sentences would place defendant in the bottom of the first-degree range, it would seem

more reasonable to hypothesize a sentence in the second-degree range if defendant went to trial and were convicted of all counts.

We defer to the court's finding that defendant presents a risk of flight, notwithstanding defendant's compliance on bail, in view of the other bail factors, which the court carefully analyzed in detail. Nonetheless, reference to the bail schedules suggests the excessiveness of the court's imposition of $150,000 cash bail for the lewdness counts, and $50,000 cash or bond on the third CSL charge.

The statutory presumption of an all-cash bail is reserved for persons generally charged with first-degree or second-degree offenses, or with the victimization of specific persons already protected by a court order. The aggregate $200,000 bail imposed here would place defendant at the top of the bail range for manslaughter, and second-degree sexual assault—crimes that carry the potential not only of second-degree sentences, but also require periods of parole ineligibility of eighty-five percent under the No Early Release Act. See N.J.S.A. 2C:43–7.2. By contrast, for defendant's fourth-degree offenses, the court at most may impose minimum parole ineligibility terms of fifty percent. See N.J.S.A. 2C:43–6b. In sum, while we recognize the bail schedules are guidelines only, the bails of $150,000 cash only and $50,000 no ten-percent option exceed the acceptable range, and we conclude are greater than necessary to assure defendant's appearance.

To avoid further delay, we exercise original jurisdiction, see Rule 2:10–5, and modify the monetary bail on the two indictments. Bail on indictment 12–07–0570, charging six counts of lewdness, shall be $75,000, cash or bond, and bail on indictment 12–06–0481, charging a violation of CSL, shall be $25,000, cash or bond. We believe the record demonstrates proof by a preponderance of the evidence, see Casavina, supra, 163 N.J.Super. at 31, 394 A.2d 142, that a ten-percent option would be insufficient to assure defendant's appearance. The court found a significant risk of flight. There was no evidence that there exist family members or other non-corporate sureties on a ten percent bail who would

reliably assure defendant's appearance. A corporate surety on a bail bond, who faces the risk of forfeiture of the full amount of the bond, would have a greater incentive to monitor defendant's whereabouts, and assure his appearance in court.

We do not intend to restrict the court's power in the future to review the bail on these two indictments or the other pending indictments. *See State v. Hawkins,* 382 *N.J.Super.* 458, 466, 889 *A.*2d 1081 (App.Div.2006) ("The court must be free to reconsider bail at any time that it becomes appropriate."). We also remand to the court to consider the imposition of appropriate non-monetary conditions of bail for the protection of the community.

Modified and remanded. We do not retain jurisdiction.