# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2240-18T6

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

RAJAHN A. HEATH,

     Defendant-Respondent.

_____

Submitted May 9, 2019 – Decided June 12, 2019

Before Judges Simonelli and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No.17-06-0459.

Jennifer Davenport, Acting Union County Prosecutor, attorney for appellant (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (John Kean III and Laura B. Lasota, Assistant Deputy Public Defenders, of counsel and on the briefs).

PER CURIAM

On leave granted, the State appeals from the December 17, 2018 orders of the trial court granting defendant, Rajahn A. Heath, a new trial and granting him pretrial release. We affirm.

We discern the following facts from the record. On April 13, 2017, Officer Earl Biddy of the Union Police Department and his partner stopped defendant and another person while they were walking in Union. Defendant provided identification. Defendant was carrying a bag and placed it on the ground while he spoke with the officers. The contents of the bag were not visible to the officers. Biddy searched defendant's person and found brass knuckles in his pocket. When Biddy began to search defendant's bag, defendant ran. Biddy pursued defendant, caught and arrested him.

After defendant's arrest, Office Joseph Devlin searched defendant's bag, which contained a loaded .22 caliber revolver[1] and a box with fifteen bullets. When Devlin attempted to clear the revolver, the cylinder fell out of the gun

---

[1] In this opinion, we refer to the object as a "gun," "handgun," "revolver" or "firearm," however, the object's status as a handgun is a question of fact to be resolved by the jury. Our reference to the object is not meant to be dispositive or express any opinion about the evidence.

frame because the cylinder pin was missing.[2]  After removing the bullets, Devlin was unable to push the cylinder back into the frame.

On April 28, 2017, the trial court granted the State's motion for pretrial detention.  On June 22, 2017, defendant was indicted for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); two counts of fourth-degree possession of prohibited weapons and devices, N.J.S.A. 2C:39-3(f)(1), N.J.S.A. 2C:39-3(e); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2).

On January 3, 2018, a different judge granted defendant's motion to reopen the detention hearing and released defendant subject to conditions.  On September 24, 2018, the trial judge herein granted the State's motion to revoke release based on defendant's arrest on new charges in Essex County and his failure to report to pretrial services.  Essex County mistakenly released defendant, but he appeared for his trial in Union County.

On October 23, 2018, a jury trial began.  During the trial, Officer Biddy was shown the gun recovered from defendant's bag.  The revolver was presented

---

[2]  A revolver has a rotating cylinder that holds bullets.  To load or remove bullets from a revolver, a pin is disengaged and the cylinder can be pushed to the side. If there is no cylinder pin, the cylinder can be pushed out of the revolver because nothing locks it in place.  As a result, a revolver without a cylinder pin cannot easily fire bullets unless the user's hand, or another object, simulates the pin.

A-2240-18T6

in two parts: the cylinder and the frame with a trigger lock.[3]  A trigger lock is a safety apparatus that attaches to the trigger area of a gun and makes it difficult to pull the trigger.  Officer Biddy testified that the trigger lock was not attached to the revolver when it was recovered from defendant's bag.

Lieutenant Michael Sandford of the Union County Police Department Firearms Identification Unit testified, over defendant's objection, as an expert in forensic firearms identification.  During his testimony, the cylinder and frame of the gun were identified separately, as they were throughout the rest of the trial. Sandford opined the revolver was operable.  He noted the revolver's cylinder pin was missing but explained to the jury that it was not strictly necessary to fire the revolver.  Sandford conducted two out-of-court tests on the revolver.  In one test, he rotated the cylinder with one hand, while holding the frame with the other, and was able to fire the revolver.  However, he admitted there were no live rounds inside the cylinder during this test.  During a second test, Sandford inserted a center punch as a substitute for a cylinder pin and was able to fire live rounds.  He opined a cylinder pin could be simulated by a dowel or nail and the revolver would become functional.

---

[3]  Throughout the trial, the cylinder of the gun was identified as S-1A and the frame was separately identified as S-1B.

A-2240-18T6

When instructing the jury, the judge explained that it was their role to determine whether the cylinder and frame together constituted a handgun. The judge also instructed the jury about the issue of inoperability of the handgun, specifically stating, "[u]nder our law a handgun must not have been so substantially altered, mutilated or disassembled to no longer possess or retain the essential characteristics of a handgun." The judge's instructions did not inform the jury to ignore the effect the trigger lock had on the handgun.

During jury deliberations, the jury received the revolver in separate pieces. When the jury exchanged the revolver for the bullets,[4] the cylinder was inserted into the frame of the revolver. The trigger lock held the cylinder in place and prevented the cylinder from falling out of the frame. Shortly after, the jury found defendant guilty of all charges.

Following the verdict, the court granted defendant's motion for judgment of acquittal on the charge of resisting arrest. On December 17, 2018, defendant also moved for judgment of acquittal and a new trial on the remaining charges. The judge denied the motion for acquittal but granted defendant a new trial.

---

[4] The gun and bullets were not given to the jury simultaneously for safety reasons.

A-2240-18T6

Defendant argued the trigger lock, which was not present when the police recovered the revolver, changed the character of the gun and prevented the jury from making a fair decision about the evidence. Specifically, he explained the trigger lock prevented the cylinder from falling out of the revolver; whereas, when the gun was discovered, the cylinder could easily be removed. The trial judge agreed with defendant and found the trigger lock's effect on the gun, absent a limiting instruction, was prejudicial.

Defendant also moved for pretrial release. The court granted the motion and imposed conditions that required defendant to appear in court, report telephonically and in-person to pretrial services, refrain from possessing weapons, refrain from using narcotics, remain in the custody of his mother in Delaware and waive extradition in the event of additional offenses or arrest. The State moved for leave to appeal the order for a new trial, which we granted, and filed an emergent appeal of the order denying pretrial detention, which we denied.

On appeal, the State argues the following:

> POINT I
> THE TRIAL COURT ABUSED ITS DISCRETION BY VACATING THE JURY VERDICT AND GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL, AND THE INTEREST OF JUSTICE DEMANDS THAT

A-2240-18T6

THE STATE'S MOTION FOR LEAVE TO APPEAL
BE GRANTED.

POINT II
THE TRIAL COURT ABUSED ITS DISCRETION BY
RELEASING DEFENDANT INTO THE CUSTODY
OF HIS MOTHER, WHO RESIDES IN DELAWARE.

We begin by recognizing the highly deferential standard of review we apply when we review a trial judge's decision to grant a new trial. State v. Armour, 446 N.J. Super 295, 306 (App. Div. 2016). "Our scope of review is limited to a determination of 'whether the findings made by the trial court could reasonably have been reached on sufficient credible evidence present in the record.'" State v. Brooks, 366 N.J. Super. 447, 454 (App. Div. 2004) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)). We "give deference to the trial judge's feel for the case since [the judge] presided over [it] . . . and had the opportunity to observe and hear the witnesses as they testified." Ibid. (second alteration in original) (quoting Russo, 333 N.J. Super. at 137).

First, we reject the argument the trial judge erred by granting defendant a new trial. The State argues N.J.S.A. 2C:39-5(b) criminalizes possession of a handgun regardless of whether the weapon is currently operable and asserts the trial judge erred when she determined the trigger lock was prejudicial to defendant. The State asserts the judge's reasoning that the trigger lock changed

the jury's ability to examine the gun was erroneous speculation. Under the plain meaning of N.J.S.A. 2C:39-1(k), a handgun is anything originally designed to be operated and fired with one hand. Based on the jury charge on the alteration and mutilation of a gun, the State argues the jury was fully aware of the definition and properly found the gun was not altered or mutilated. The jury knew they could ask questions, as evidenced by their request for bullets, but they never inquired about the gun or trigger lock.

Under N.J.S.A. 2C:39-5(b), "[a]ny person who knowingly has in his possession any handgun, including any antique handgun, without first having obtained a permit to carry the same . . . is guilty of a crime[.]" N.J.S.A. 2C:39-1(k) provides a handgun is "any pistol, revolver, or other firearm originally designed or manufactured to be fired by the use of a single hand." A firearm "means any handgun . . . from which may be fired or ejected any . . . bullet . . . by means of a cartridge or shell[.]" N.J.S.A. 2C:39-1(f).

In State v. Gantt, our Supreme Court explained that whether an object is a firearm is determined in reference to its original design. 101 N.J. 573, 584 (1986). As long as "the device was originally designed to deliver a potentially-lethal projectile[,]" it meets the definition of a firearm. Id. at 589. Operability becomes an issue when the object "has undergone such substantial alteration or

A-2240-18T6

mutilation that the instrument has completely and permanently lost the characteristics of a real gun." Id. at 590.

> Conceivably, although having initially possessed such characteristics, it may have lost them through mutilation, destruction or disassembly. Where there appears to be a legitimate dispute as to whether any such device possesses or retains the essential characteristics . . . [t]hat question should be resolved as other questions of fact.
>
> [State v. Morgan, 121 N.J. Super. 217, 219 (App. Div. 1972).]

In State v. Orlando, 269 N.J. Super. 116, 126-27 (App. Div. 1993), the defendant was charged with robbery with a deadly weapon. However, the shotgun used in the robbery had a wooden dowel stuffed down the barrel and lacked a firing pin. Id. at 128. We explained the shotgun was still a firearm, even if it was not operable, because its characteristics had not been so altered as to "completely and permanently lo[se] the characteristics of a real gun." Id. at 131 (quoting Gantt, 101 N.J. at 590).

Here, the issue is whether the trigger lock prevented defendant from proving the revolver, by virtue of the missing cylinder pin, lacked the characteristics of a real gun. The trial judge determined her failure to advise the jury not to consider the presence of the trigger lock was indeed prejudicial to defendant. We discern no abuse of the judge's discretion in granting a new trial.

9

Rule 3:20-1 states the trial judge should not "set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." The jury charge is considered "a road map to guide the jury and without an appropriate charge a jury can take a wrong turn in its deliberations." State v. Martin, 119 N.J. 2, 15 (1990). Even if not requested by the defendant, the court has the responsibility to provide complete instructions. State v. Grunow, 102 N.J. 133, 148 (1986). "[The] judicial obligation, to assure the jury's impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions, is at the core of the guarantee of a fair trial." Id. at 149 (quoting State v. Simon, 79 N.J. 191, 206 (1979)). An erroneous instruction on matters or issues material to the jurors' deliberations is presumed to be reversible error. State v. Collier, 90 N.J. 117, 122-23 (1982).

At the same time, it is difficult to determine the basis for a jury decision. "The tradition of the common law does not permit us to speculate upon the foundations of a jury verdict." Grunow, 102 N.J. at 148. "[A]n individualized assessment of the reason for [a jury verdict] would be based either on pure

10

speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." Ibid. (alterations in original) (quoting United States v. Powell, 469 U.S. 57, 67 (1984)).

There is no way to be sure of the jury's decision-making process. In reaching her decision, the judge stated:

> If that safety[5] wasn't on there and they took the gun -- and we don't know because the safety was on there is the issue. When they took S-1A and they put . . . S-1B in [and] cocked it, it stayed in place. But who knows without the pin if that would've happened without the safety. . . . I don't know. I don't know and neither did they.
>
> And when your expert says, that I have to steady it while I cock it, who knows if you can even cock it and [have] it stay in place if the safety wasn't there. I don't know. Your expert doesn't know. And the jury sure didn't know because they played with the gun once or they observed the gun once it stuck together, bam, three minutes later they walk out they want to see the bullets and then they have a guilty verdict.
>
> I don't know what they considered, but I do know that they did not consider this S-1A, S-1B the way they should have. . . . [W]as it plain error? Was it sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise . . . might not have reached? I absolutely believe it did. Because as soon as it stuck together they came out with a guilty verdict. There was no question that this was a gun to them

---

5 The judge uses the term "safety" to refer to the trigger lock on the gun. The terms are used synonymously in this case.

because man, they can't even pull it apart. This thing is stuck together. This is a working pistol, gun, weapon, handgun.

And if it's significant -- is it a significant issue, this [c]ourt must determine as well, is it significant? Well, it's the case. It's the whole case. It's [defendant's] whole argument. And I cannot allow this verdict to stand on that count knowing the prejudicial [e]ffect that the lack of instruction, the lack of information given to the jury they weren't given this information. It could've been solved with an instruction by me saying this will lock it together, this will make it stick together without it, you know, you don't need a pin if you have this lock. It just doesn't -- it's not fair. It's really -- it's just not fair.

Without knowing how the jury actually decided the issue with respect to this gun and trigger lock, we agree that the presence of the trigger lock, absent limiting instructions, had the potential to mislead the jury. In effect, the trigger lock deprived the jury of the chance to determine whether the revolver, as it was found in defendant's possession, possessed the essential characteristics of a handgun. Hence, we discern no abuse in the court's exercise of discretion.

We turn next to the State's opposition to defendant's pretrial release. We review pretrial detention decisions for an abuse of discretion. See State v. S.N., 231 N.J. 497, 500 (2018); State v. C.W., 449 N.J. Super. 231, 235 (App. Div. 2017). We "may find an abuse of discretion when a decision 'rest[s] on an impermissible basis' or was 'based upon a consideration of irrelevant or

inappropriate factors.'" C.W., 449 N.J. Super. at 255 (quoting State v. Steele, 430 N.J. Super. 24, 34-35 (App. Div. 2013)). An abuse of discretion may also occur when the trial court fails to take into consideration all relevant factors or renders a decision based upon a misconception of the law. Ibid.

New Jersey's reformed bail system favors "primarily relying upon pretrial release by non-monetary means to reasonably assure" three main goals: the "defendant's appearance in court . . ., the protection of the safety of any other person or the community, [and] that the . . . defendant will not obstruct . . . the criminal justice process." N.J.S.A. 2A:162-15. The Bail Reform Act "favors pretrial release and monitoring as the presumptive approach and limits preventive detention to defendants who actually warrant it." C.W., 449 N.J. Super. at 248· (quoting State v. Robinson, 448 N.J. Super. 501, 508 (App. Div. 2017)). A defendant is presumed safe for pretrial release, unless the court finds probable cause that the defendant committed murder or a crime exposing him or her to life imprisonment. N.J.S.A. 2A:162-18(b); N.J.S.A. 2A:162-19(b). Detention may be ordered if the court "finds clear and convincing evidence that no amount of monetary bail, non-monetary conditions of pretrial release or combination of monetary bail and conditions would reasonably assure" the Act's goals. N.J.S.A. 2A:162-18(a)(l).

Under N.J.S.A. 2A:162-20, a court is to consider a non-exhaustive list of factors in determining whether pretrial release is appropriate, including "[t]he nature and circumstances of the offenses charged; [t]he weight of the evidence . . . ; [t]he history and characteristics of the . . . defendant[;]" the safety of the public; the risk of obstruction; and the recommendation of the pretrial services program. A court is permitted to reopen a detention hearing at any time before trial if the court finds information unknown at the time of the detention hearing and it has a material bearing on the issue of whether conditions exist that will reasonably assure that the defendant's release meets the goals of the statute. See N.J.S.A. 2A:162-19(f).

Here, the court revoked defendant's initial pretrial release because he was charged in Essex County after the charges in the current case were filed. Those charges were downgraded, and due to an administrative error, Essex County released defendant. Defendant still appeared in court for the December 17, 2018 new trial and detention hearing.

We are convinced these facts are sufficient to find that the circumstances had changed since defendant's initial pretrial detention. For this reason, the judge did not abuse her discretion in reopening the hearing and denying the State's application.

14

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2240-18T6