176 A.3d 813

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. S.N., DEFENDANT–RESPONDENT.

A–60 September Term 2016
079320

Argued September 11, 2017—Decided January 30, 2018

498

Sarah Lichter, Deputy Attorney General, argued the cause for appellant (Christopher S. Porrino, Attorney General, attorney; Sarah Lichter, of counsel and on the brief; Jeffrey L. Weinstein, Hunterdon County Assistant Prosecutor, on the brief).

Philip De Vencentes argued the cause for respondent (Galantucci, Patuto, De Vencentes, Potter & Doyle, attorneys; Philip De

Vencentes, on the briefs; Richard G. Potter, of counsel and on the briefs).

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor Director, argued the cause for amicus curiae County Prosecutors Association of New Jersey (Richard T. Burke, President, attorney; Frank J. Ducoat, of counsel and on the brief; Kayla Elizabeth Rowe, on the brief).

Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director, attorney; Alexander R. Shalom, Edward L. Barocas, and Jeanne M. LoCicero, on the brief).

Elizabeth C. Jarit, Assistant Deputy Public Defender, argued the cause for amicus curiae Office of the Public Defender (Joseph E. Krakora, Public Defender, attorney; Elizabeth C. Jarit, of counsel and on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

In this appeal, we determine the proper standard for appellate review of pretrial detention decisions under the Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162–15 to –26. After doing so, we must apply that standard to the facts of the present appeal.

We conclude that the proper standard of appellate review is whether the trial court abused its discretion by relying on an impermissible basis, by relying upon irrelevant or inappropriate factors, by failing to consider all relevant factors, or by making a clear error in judgment.

Here, we affirm the Appellate Division's judgment reversing the trial court's decision to detain defendant. We do so because the trial court relied on inappropriate factors and failed to consider all relevant factors in finding that there was sufficient evidence before the court to overcome the presumption of defendant's release.

## I.

The facts and procedural history are culled from the record of defendant's detention hearing.

In March 2017, law enforcement obtained an arrest warrant for defendant S.N.[1] for acts alleged to have been committed against his stepdaughter[2] in 2012. In a complaint-warrant, the State charged defendant with first-degree aggravated sexual assault on a person under the age of thirteen, N.J.S.A. 2C:14–2(a)(1); fourth-degree lewdness, N.J.S.A. 2C:14–4(b)(1); and second-degree child endangerment, N.J.S.A. 2C:24–4(a).[3] The affidavit of probable cause in support of the complaint-warrant stated that the victim told a staff member at her school that defendant came into her bedroom and sexually assaulted her approximately fifty times while she was in the sixth and seventh grades. The affidavit also disclosed that, in 2015, the victim told a friend that defendant had "touched her in a sexual manner." In addition, the State prepared a preliminary law enforcement incident report (PLEIR), which stated that "defendant was known to the victim as [f]amily."

Following defendant's arrest, a pretrial services officer prepared a Public Safety Assessment (PSA)[4] that rated defendant a 1 out of 6—the lowest possible risk score—for both failure to appear

---

[1] As per Rule 1:38–3(c)(12), initials will be used to preserve the confidentiality of the victim in this case.

[2] Defendant and the victim's mother were never married and defendant is not the victim's biological father.

[3] Two months after defendant's arrest on the complaint-warrant, he was indicted for first-degree aggravated sexual assault, N.J.S.A. 2C:14–2(a)(1); second-degree sexual assault, N.J.S.A. 2C:14–2(b); second-degree endangering the welfare of a child, N.J.S.A. 2C:24–4(a)(1); and fourth-degree lewdness, N.J.S.A. 2C:14–4(b)(1).

[4] The PSA is a tool that "assesses the level of risk for failure to appear and for new criminal activity on a scale of 1 to 6, with 6 being the highest, and may include a flag to denote new violent criminal activity." State v. Robinson, 229 N.J. 44, 62, 160 A.3d 1 (2017). In addition, "[t]he PSA ... recommends whether to release a defendant and what, if any, conditions of release to impose." Ibid.

and new criminal activity. The PSA noted that defendant did not have any prior criminal history or failures to appear, but the current charges pending against defendant stemmed from a violent offense. Despite the low risk scores, the PSA concluded "No Release Recommended."

The State moved for pretrial detention, pursuant to N.J.S.A. 2A:162–19. In support of its pretrial detention motion, the prosecution certified that the charged crime could subject defendant to "an ordinary or extended term of life imprisonment," [5] there is a "serious risk" that "defendant will not appear in court," and "defendant will pose a danger to any other person or the community." In addition, the certification stated, "[d]efendant's victim is his step-daughter. Defendant is a risk to harm and intimidate his victim and her mother and to obstruct justice by interfering with the investigation and witnesses. Defendant is a risk of flight because his biological mother and sister live in Canada."

At the detention hearing, the State submitted the affidavit of probable cause in support of the complaint-warrant, the PLEIR,[6] and the PSA. The prosecutor claimed that the PSA did not take into account defendant's dual citizenship or the risk to the victim because "[defendant] knows where she lives. He knows where her mother lives. And the fear is that if he's released, he will harm them physically." Regarding the potential for obstruction, the prosecutor stated that

[t]hese sorts of cases are sensitive in the sense that if a defendant has access to the victim or other family members, we know—and it's common sense—that the defendant often tries to obstruct justice by trying to convince family members and other people in the family to say it didn't happen, or put pressure on the victim.

---

[5] The State had not, in fact, charged defendant with an offense that carried an ordinary or extended term of life imprisonment. The prosecutor corrected this assertion on the record at the pretrial detention hearing.

[6] It is not clear from the transcript that the PLEIR was offered or admitted into evidence. However, probable cause is not disputed and, therefore, it does not affect the ultimate outcome of this case.

The State also sought a restraining order to prohibit defendant from having contact with the victim, her mother, and his three biological children (the victim's half-siblings).

Defense counsel countered that the State did not present clear and convincing evidence to support its detention motion, and that the State's arguments were based on "mere speculation." Defense counsel further noted that defendant had no prior record, including no disorderly persons offenses, had no failures to appear, was gainfully employed, and had the support of his adoptive parents, who live in New Jersey. Regarding defendant's biological mother in Canada, defense counsel stated defendant has not had "telephonic or face-to-face contact with her" and defendant "doesn't even know where she lives." Counsel noted that defendant's biological mother had visited New Jersey "more than a decade ago," but it "ended in [defendant's] getting a restraining order against her, [and] her being physically removed from his house by the police."

Further, defense counsel claimed that defendant lived in the same home as the victim "until a couple of years ago" and that "no further problems apparently ... have been even alleged." Defense counsel also asserted that defendant is involved in the lives of his three biological children and has had "constant contact" with them despite no longer living in the same household.

The trial court issued an oral ruling at the end of the detention hearing granting the State's motion for pretrial detention and the restraining order. The court found that the State had established probable cause that defendant committed the charged offenses. In making the pretrial detention determination, the judge reviewed the circumstances of the charged offenses, the potential sentence if convicted, defendant's risk of flight in light of his dual U.S. and Canadian citizenship, and the potential for defendant's obstruction of the criminal justice process "[b]ased on the fact that this is essentially a he said, she said situation."

The court gave great weight to "the nature and seriousness of the danger to any other person or community that would be posed

by the defendant's release." Also, the court specifically found that defendant is eligible for detention under the statute "because this is a first degree [offense] with No Early Release attaching to it pursuant to N.J.S.A. 2A:162–19(a)(1)." The court summarized its detention decision as follows:

> Based on the factors I've outlined, the Court does find that the nature and circumstances should be given great weight, as well as the flight risk due to dual citizenship. Also, the protection of the safety of any other person or the community, as well as the fact that—and/or the defendant will not obstruct or attempt to obstruct the criminal justice process.
>
> In making my decision today I've given great weight to NERA,[7] the fact that this is a NERA offense and first degree, the dual citizenship, due to the extensi[ve] exposure of incarceration if convicted, the fact that release was not recommended, and the fact that this is considered a violent offense. Therefore, based on all of the above the Court will grant the State's motion and pretrial detention will occur.

In "[t]he history and characteristics of the defendant" section of the pretrial detention order, the court wrote, "[r]isk of flight— family in Canada, no prior record, dual citizenship, employed. Resident of NJ." Under "[t]he nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release," the court wrote that the alleged crime was a first-degree aggravated sexual assault and further noted "NERA." Regarding the risk of obstruction, the court wrote "potential to intimidate." The court also listed "Further Reasons for Pretrial Detention":

- NERA offense—[first degree]
- [D]ual citizenship creates a high risk of flight due to the extensive exposure to incarceration
- Release not recommended
- Violent offense

Pursuant to Rule 2:9–13, defendant appealed from the trial court's pretrial detention order, and the Appellate Division reversed and released defendant with conditions. The panel, citing State v. C.W., 449 N.J. Super. 231, 156 A.3d 1088 (App. Div. 2017), found that "[t]he trial court abused its discretion by not considering defendant's age, level of prior criminal involvement and ties to

---

[7] "NERA" refers to the "No Early Release Act," N.J.S.A. 2C:43–7.2.

the community." The Appellate Division required as part of defendant's release that "defendant must report to pretrial detention as frequently as necessary to determine his compliance with restraining orders prohibiting him from having any contact with the victim or her family . . . . [and] must surrender his passport."

This Court granted the State's emergent motion for leave to appeal and for a stay of the Appellate Division's order to release defendant on conditions. 230 N.J. 349, 350, 167 A.3d 644 (2017). We granted leave to appear as amicus curiae to the American Civil Liberties Union of New Jersey (ACLU), the Office of the Public Defender (OPD), and the County Prosecutors Association of New Jersey (CPANJ). Following oral argument, we lifted the stay, allowed defendant's release, and directed that "the trial court may enforce the Appellate Division's order reversing the order for defendant's pretrial detention, including establishing the schedule for defendant to report 'as necessary to determine his compliance with restraining orders.'" 230 N.J. 585, 170 A.3d 932 (2017).

## II.

We summarize the parties' arguments on appeal as follows.

## A.

The State urges this Court to adopt an abuse of discretion standard and claims that the appellate panel essentially reviewed the detention decision de novo, substituting its own judgment for that of the trial court. The State further contends that the Appellate Division compounded its error by imposing conditions of release without a remand to the trial court.

The State asserts that, in its detention order, the trial judge highlighted facts that pertain "to every subcategory of N.J.S.A. 2A:162–20, which is merely a permissive list of factors a court may consider" and, therefore, the trial court did not fail to consider any relevant factors, and did not err in ordering pretrial detention. The State posits that "[t]he PSA is only a starting point" and that

the court "properly gave great weight to the nature and circumstances of the offense charged" and properly "considered the risk that defendant would contact the victim ... and that defendant knows how to contact the victim as she is [his] stepdaughter." The State also notes that the court was permitted to consider defendant's dual citizenship as an indication of an enhanced flight risk.

Lastly, the State, citing C.W., 449 N.J. Super. at 231, 156 A.3d 1088, asserts that the panel was required to identify factors that the trial court should have considered and then remand to the trial court.

### B.

Noting that a majority of circuit courts have adopted a standard of independent review, defendant urges the Court to reject a more deferential standard and to adopt a standard that "calls for independent review, while according deference to the trial judge's factual findings that are clearly and convincingly supported by the evidence presented by the prosecutor."

Defendant asserts that "[t]here is a significant difference between the nature of the liberty interest involved for a defendant between seeking a review of an order setting unreasonable release conditions ... and an order denying release under any conditions." The latter type of review is at issue in this case; it "necessarily requires an independent review" of the evidence to determine whether that evidence clearly and convincingly supports the State's motion for pretrial detention.

Regardless of which standard the Court adopts—abuse of discretion or independent review with deference—defendant argues that the panel was correct to reverse the trial court's order of detention because the State failed to produce clear and convincing evidence to rebut the presumption of pretrial release. Defendant claims the State offered "little more than its boilerplate recitation" that defendant posed a risk of flight and of obstruction.

## C.

The amici all urge the Court to adopt an abuse of discretion standard. The ACLU and the OPD assert that the trial court abused its discretion in ordering detention. Conversely, the CPANJ asserts that the trial court did not abuse its discretion.

The ACLU argues that "the trial court abused its discretion by considering inappropriate factors, by failing to consider necessary factors and by engaging in a clear error of judgment." The ACLU notes that defendant is an United States citizen, that his dual citizenship alone is not probative of risk of flight, and that "there is no evidence, other than [d]efendant's relationship to the complaining witness, to suggest he would interfere in the investigation or prosecution of the case."

The ACLU asserts that the court incorrectly held the fact that the case "is essentially a he said, she said situation" against defendant because "a defendant should not be deemed to be higher risk because there is less evidence."

The ACLU also claims that the trial court failed to consider necessary factors such as defendant's employment, ties to the State of New Jersey, age, and lack of a criminal record. The ACLU therefore contends that the court abused its discretion by failing to consider factors that would make it more likely that defendant would appear in court when required.

The OPD makes similar arguments. It contends that the trial court failed to make an individualized risk assessment by failing to consider defendant's age, employment, residence, and lack of criminal record. The OPD further argues defendant "received the lowest PSA scores, had no violence flag,[8] was gainfully employed, had absolutely no criminal history, and had strong family ties in New Jersey." According to the OPD, the court also "inappropri-

---

[8] Violence flags are generated as part of a PSA "if there is a statistical likelihood that the defendant would engage in a New Violent Criminal Activity." State v. C.W., 449 N.J. Super. 231, 240, 156 A.3d 1088 (App. Div. 2017).

ately considered the defendant's dual citizenship and familiarity with the complaining witness as evidence of risk of flight and obstruction when neither fact establishes an actual risk that the defendant would engage in such future conduct." Additionally, the OPD argues that the court did not provide any statement to support its finding that defendant posed a danger to the community.

The OPD claims that the trial court ordered defendant detained pretrial based solely on the charged crime, even though first-degree sexual assault is not one of the enumerated offenses that the Legislature identified in the CJRA. The OPD reaches this conclusion "[b]ecause the only other reasons put forward—that [defendant] has dual citizenship and knows the victim—even if properly considered, could not be sufficient to overcome a presumption of release."

The CPANJ similarly asks this Court to confirm "that the appropriate appellate standard of review in pretrial detention cases is abuse of discretion, with de novo review only appropriate when the pretrial detention hearing court has misapplied the law." According to the CPANJ, this standard comports with the purpose of the CJRA and "the historical standards of review for pretrial and post-conviction decisions." The CPANJ claims that, before the CJRA, appellate courts reviewed bail determinations for abuse of discretion, and "[t]here is no legal or public policy reason to disturb a legal standard that advances the efficient administration of pretrial justice and appropriate risk management."

Finally, according to the CPANJ, assuming the judge abused her discretion, the panel should have remanded the case "for consideration in light of the appellate court's ruling."

III.

A.

Our initial task is to determine the scope of appellate review of pretrial detention decisions made by the trial court under the

CJRA. Although this is the first time this Court has confronted the issue, guidance is provided by the United States Supreme Court's decision in McLane Co. v. EEOC, 581 U.S. ——, 137 S.Ct. 1159, 197 L.Ed.2d 500 (2017).

In McLane, the Supreme Court employed a two-part test to determine the appropriate standard of appellate review in the absence of an "explicit statutory command." 137 S.Ct. at 1166–67. In Pierce v. Underwood, a case involving the award of counsel fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), the Court provided an example of what would qualify as a "relatively explicit statutory command" that would reveal "the standard of appellate review": "[T]he court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (alterations in original) (quoting 42 U.S.C. § 1988). Absent such a command, a court first must "ask whether the 'history of appellate practice' yields an answer. Second, at least where 'neither a clear statutory prescription nor a historical tradition exists,' we ask whether, 'as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question.'" McLane, 137 S.Ct. at 1166–67 (quoting Pierce, 487 U.S. at 558–60, 108 S.Ct. 2541).

1.

To determine whether there is a "clear statutory prescription" in favor of a particular review standard, we look to the text of the CJRA. We note that the CJRA does not specify a standard of review, unlike the example furnished in Pierce. That does not mean, however, that the statute cannot provide guidance as to the appropriate level of review. Indeed, although the United States Supreme Court did not find an "explicit statutory command" in the legislation at issue in Pierce, it found the use of permissive language highly significant:

We turn first to the language and structure of the governing statute. It provides that attorney's fees shall be awarded "unless the court finds that the position of the

United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). This formulation, as opposed to simply "unless the position of the United States was substantially justified," emphasizes the fact that the determination is for the district court to make, and thus suggests some deference to the district court upon appeal. That inference is not compelled, but certainly available.

[Pierce, 487 U.S. at 559, 108 S.Ct. 2541.]

We therefore review the applicable provisions of the CJRA. We do so in the context of the statutory requirement that the CJRA "shall be liberally construed to effectuate the purpose of primarily relying upon pretrial release by non-monetary means to reasonably assure" that a defendant will "appear[ ] in court when required," will not endanger "the safety of any other person or the community," and "will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162–15.

The CJRA provides that, "following the issuance of a complaint-warrant," as occurred in this case, a defendant "shall be temporarily detained to allow the Pretrial Services Program to prepare a risk assessment with recommendations on conditions of release." N.J.S.A. 2A:162–16(a); see also N.J.S.A. 2A:162–25. Thereafter, the CJRA authorizes trial courts, "upon motion of a prosecutor," to order a defendant detained pretrial "when it finds clear and convincing evidence that no condition or combination of conditions can reasonably assure the effectuation of [the] goals" of safeguarding against danger, flight, and obstruction. N.J.S.A. 2A:162–15.

When considering a prosecutor's detention motion, trial courts must consider the risk assessment and recommendations and "shall make a pretrial release decision" within forty-eight hours of the "defendant's commitment to jail." N.J.S.A. 2A:162–16(b)(1). To make that decision, the "court shall hold a hearing to determine whether any amount of monetary bail or non-monetary conditions or combination of monetary bail and conditions . . . will reasonably assure" that the three goals set forth above are met. N.J.S.A. 2A:162–19(c). If, as in this case, the prosecutor moves for detention where there is no indictment, the prosecutor must first establish at the hearing that probable cause exists that the defendant committed the charged offense. N.J.S.A. 2A:162–

19(e)(2). Unless the defendant is charged with murder or a crime for which he would be subject to an ordinary or extended life term, N.J.S.A. 2A:162–19(b), the CJRA imposes a presumption against pretrial detention, N.J.S.A. 2A:162–18(b); R. 3:4A(b)(5). The State can rebut that presumption of release only by presenting "clear and convincing evidence." N.J.S.A. 2A:162–18(a)(1); see also R. 3:4A(b)(5).

At a pretrial detention hearing, the defendant has the right "to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." N.J.S.A. 2A:162–19(e)(1). The State need not present a live witness at a detention hearing, State v. Ingram, 230 N.J. 190, 213, 165 A.3d 797 (2017), but it has the option to do so. Additionally, "the trial court has discretion to require direct testimony if it is dissatisfied with the State's proffer." Ibid.

At the hearing, the court "may take into account" various factors, including "[t]he nature and circumstances of the [charged] offense"; the weight of the evidence proffered against the defendant; characteristics of the defendant as he or she stands before the court, including his or her employment status, familial ties, and length of residence in the community; "[t]he nature and seriousness of the danger" that would be posed to other persons or the community if the defendant were released; the risk that the defendant will obstruct the criminal justice process; and the PSA recommendation. N.J.S.A. 2A:162–20.

If the court orders pretrial detention, it shall "include written findings of fact and a written statement of the reasons for the detention." N.J.S.A. 2A:162–21(a)(1); see also R. 3:4A(c). A defendant may appeal a pretrial detention order as of right, pursuant to court rules. N.J.S.A. 2A:162–18(c); see also R. 2:9–13(a). Because the defendant remains detained pending appeal, the court shall hear the defendant's appeal in an expedited manner. N.J.S.A. 2A:162–18(c); R. 2:9–13(a).

■ Although the CJRA does not explicitly set forth the appropriate scope of appellate review of trial court detention decisions, its language supports that the proper standard of appellate review is abuse of discretion. First, the Legislature used both "may" and "shall" in various provisions of the CJRA. See generally N.J.S.A. 2A:162–15 to –26. "Where a statutory provision contains both the words 'may' and 'shall,' it is presumed that the lawmaker intended to distinguish between them, 'shall' being construed as mandatory and 'may' as permissive." Aponte–Correa v. Allstate Ins. Co., 162 N.J. 318, 325, 744 A.2d 175 (2000).

Under the CJRA, "the court may take into account" certain information. N.J.S.A. 2A:162–20 (emphasis added). If the court finds by clear and convincing evidence that no conditions of release will be sufficient, "the court may order, before trial, the detention of an eligible defendant." N.J.S.A. 2A:162–18(a)(1) (emphasis added). By contrast, the trial court must provide a written statement of reasons if it orders detention. N.J.S.A. 2A:162–21(a)(1). The pointed use of the permissive "may" in those provisions establishes the trial court's significant discretion in making pretrial detention decisions and suggests that deferential review is appropriate. See Pierce, 487 U.S. at 559, 108 S.Ct. 2541.

Nevertheless, because the statutory language is not sufficiently explicit to dispose of the question here, we apply the two-part McLane test.

2.

Turning to the first inquiry under that test, we find further support for the abuse of discretion standard in "the history of appellate practice." McLane, 137 S.Ct. at 1166.

Since the 1800s, appellate courts have acknowledged that bail determinations were discretionary and not readily reviewable by appellate courts. See Parsell v. State, 30 N.J.L. 530, 546 (1863) (finding that "the law confides 'the exclusive order and directions in such cases [ (referring to discharging bail, &c.,) ] to the legal discretion and judgment of the court having jurisdiction over the

subject matter; and courts of error will not deem themselves at liberty to review the same' " (alteration in original) (quoting Wright v. Green, 11 N.J.L. 334, 337 (Sup. Ct. 1830) (involving trial court's decision to set aside amercement and discharge debtor) ) ).

As a result, over many decades, appellate courts have reviewed many bail determinations for abuse of discretion. See State v. Fajardo–Santos, 199 N.J. 520, 531, 533–34, 973 A.2d 933 (2009) (stating that a trial court "engage[s] in a fact-sensitive analysis in setting bail" and noting our Court "us[ed] [an] abuse of discretion standard to review [the] fact-sensitive determination whether to remit forfeited bail" in State v. Ventura, 196 N.J. 203, 206, 952 A.2d 1049 (2008) ); State v. Korecky, 169 N.J. 364, 373, 777 A.2d 927 (2001) ("The imposition of a bail condition is a matter of judicial discretion."); State v. Johnson, 61 N.J. 351, 364, 294 A.2d 245 (1972) (noting that "bail liberty is a matter for the discretion of the trial courts" and that "discretion must be exercised reasonably"); State v. Steele, 430 N.J. Super. 24, 34, 61 A.3d 174 (App. Div. 2013); State v. Petrucelli, 37 N.J. Super. 1, 6, 116 A.2d 721 (App. Div. 1955) (noting that "[t]he amount of bail is left to sound judicial discretion" and that appellate courts are "not warranted in nullifying a trial court's exercise of judicial discretion in the absence of showing that its action was clearly unreasonable"). There is no indication that the Legislature intended to change that practice under the new system. See C.W., 449 N.J. Super. at 254–56, 156 A.3d 1088.

### 3.

The second part of the Supreme Court's test in McLane is whether "as a matter of sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." 137 S.Ct. at 1166–67 (quoting Pierce, 487 U.S. at 559–60, 108 S.Ct. 2541). We have long deferred to trial courts' factual determinations because they "hear and see the witnesses and . . . have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964). As a

consequence, trial courts are "better positioned" than appellate courts to make factual determinations.

With respect to detention determinations, trial courts regularly handle detention motions under the CJRA and, going forward, will continue to develop expertise in the CJRA's application. See Ingram, 230 N.J. at 212, 165 A.3d 797 (stating that under CJRA, "the State moved for detention in 7824 cases in the first half of 2017" with "[c]ourts h[olding] hearings in 5548 of those cases").

The Legislature's significant use of permissive language in the CJRA, the history of appellate deference to the factual findings of trial courts, the history of appellate review of bail decisions for abuse of discretion, and the ongoing development of trial court expertise in applying the CJRA, all suggest that abuse of discretion is the appropriate appellate standard of review for determinations made in pretrial detention hearings under the CJRA.

B.

In C.W., cited by the Appellate Division here, the panel also concluded that an abuse of discretion standard should apply to detention determinations under the CJRA. 449 N.J. Super. at 235, 252–54, 156 A.3d 1088. The panel found support in the words and policy objectives of the CJRA—"the objectives of the [CJRA] in attaining the expeditious resolution of criminal cases could be thwarted if this court routinely second-guessed decisions on pretrial detention motions simply because we personally would have reached a different result than the trial judge." Id. at 256, 156 A.3d 1088.

C.W. correctly recognized that, "[i]n many instances, the pretrial hearing may entail no witness testimony and no need for credibility findings by the trial court, to which we ordinarily accord great deference." Id. at 257, 156 A.3d 1088. Nevertheless, regardless of whether the evidence is live testimony, a videotaped statement, or documentary evidence, deference is owed to the trial court's determinations of fact and credibility. State v. S.S., 229 N.J. 360, 379, 162 A.3d 1058 (2017) ("[A] standard of deference to

a trial court's fact findings, even fact findings based solely on video or documentary evidence, best advances the interests of justice in a judicial system that assigns different roles to trial courts and appellate courts."); State v. Elders, 192 N.J. 224, 244, 927 A.2d 1250 (2007).

 We conclude that the appellate panel in C.W. identified the proper standard of review of detention decisions under the CJRA—abuse of discretion. We find that the panel correctly enunciated the standard when it stated that,

> [w]hile the concept is difficult to define with precision, an appellate court "may find an abuse of discretion when a decision 'rest[s]' on an impermissible basis' or was 'based upon a consideration of irrelevant or inappropriate factors.'" Steele, 430 N.J. Super. at 34–35, 61 [61 A.3d 174] (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 [796 A.2d 182] (2002) ). An appellate court can also discern an abuse of discretion when the trial court fails to take into consideration all relevant factors and when its decision reflects a clear error in judgment. State v. Baynes, 148 N.J. 434, 444 [690 A.2d 594] (1997). Likewise, when the trial court renders a decision based upon a misconception of the law, that decision is not entitled to any particular deference and consequently will be reviewed de novo. See, e.g., State v. Stein, 225 N.J. 582, 593 [139 A.3d 1174] (2016); State v. Williams, 441 N.J. Super. 266, 272 [117 A.3d 1247] (App. Div. 2015).
>
> [C.W., 449 N.J. Super. at 255, 156 A.3d 1088.]

Under that standard, "[a] reviewing court generally will give no deference to a trial court decision that fails to 'provide factual underpinnings and legal bases supporting [its] exercise of judicial discretion.'" C.W., 449 N.J. Super. at 255, 156 A.3d 1088 (second alteration in original) (quoting Clark v. Clark, 429 N.J. Super. 61, 72, 57 A.3d 1 (App. Div. 2012) ). In other words, a trial court's detention decision not supported by articulable facts is not entitled to deference and may constitute an abuse of discretion.

## IV.

 Our final task is to determine whether the trial court abused its discretion in ordering defendant's detention. This determination requires a review of whether the trial court's decision "rest[s] on an impermissible basis," "was based upon a consideration of irrelevant or inappropriate factors," "fail[ed] to take into consideration all relevant factors and whe[ther] [the] decision

reflects a clear error in judgment." C.W., 449 N.J. Super. at 255, 156 A.3d 1088 (first alteration in original) (internal citations omitted).

Where, as here, the defendant has not been indicted, the CJRA requires trial courts to determine at a detention hearing whether the State established probable cause and demonstrated by clear and convincing evidence that a defendant's danger, risk of flight, and risk of obstruction overcomes the presumption of release. See N.J.S.A. 2A:162–18(a)(1); –19(e)(2); –20(a), (b). Because the finding of probable cause is not at issue here, we confine our consideration to the trial court's conclusion that defendant's danger, risk of flight, and risk of obstruction overcame the presumption of his release. See N.J.S.A. 2A:162–18(a)(1); –19(e)(2); –20(a), (b).

We repeat the following principles that guide our final determination. The State's burden to overcome the statutory presumption of release is substantial because "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." State v. Robinson, 229 N.J. 44, 68, 160 A.3d 1 (2017) (alteration in original) (quoting United States v. Salerno, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ). If the court orders pretrial detention, it shall "include written findings of fact and a written statement of the reasons for the detention." N.J.S.A. 2A:162–21(a)(1); see also R. 3:4A(c). Indeed, "[a] reviewing court generally will give no deference to a trial court decision that fails to 'provide factual underpinnings and legal bases supporting [its] exercise of judicial discretion.' " C.W., 449 N.J. Super. at 255, 156 A.3d 1088 (second alteration in original) (quoting Clark, 429 N.J. Super. at 72, 57 A.3d 1).

The CJRA specifically delineates the kind of evidence that the court may consider in making a detention decision. N.J.S.A. 2A:162–20. As noted above, pursuant to N.J.S.A. 2A:162–20, the court may take into account various factors, including "[t]he nature and circumstances of the [charged] offense;" "the weight of the evidence" proffered against the defendant; characteristics of the defendant as he stands before the court, including his or her

employment status, familial ties, and length of residence in the community; "[t]he nature and seriousness of the danger" posed to other persons or the community if the defendant were released; the risk that the defendant will obstruct the criminal justice process; and the PSA recommendation.

The court here considered the nature of the offense charged and gave it "great weight." The court acknowledged the weakness of the State's case by stating that the proofs were limited to "he said, she said." Even though the weakness of the State's case generally militates in favor of release, the court used this factor to support the prosecutor's claim that there was a risk of obstruction. That was so, even though there was no past conduct by defendant or empirical evidence offered by the prosecutor to support the contention that

> [t]hese sorts of cases are sensitive in the sense that if a defendant has access to the victim or other family members, we know—and it's common sense—that the defendant often tries to obstruct justice by trying to convince family members and other people in the family to say it didn't happen, or put pressure on the victim.

Defendant's characteristics as he stood before the court, pursuant to N.J.S.A. 2A:162–20, were as follows: he was fifty years of age; he had a PSA score of 1/6—the lowest score—for both "[f]ailure to appear" and "[n]ew criminal activity"; he was gainfully employed, had no criminal history, had no violence flags, and had strong ties to the community including the support of his adoptive parents and his relationship with his biological children; he was born in Canada, but adopted shortly thereafter, and has lived in the United States; because he was born in Canada, defendant has dual U.S.–Canadian citizenship; and his birth mother visited him on one occasion more than ten years ago, and the visit ended with defendant obtaining a restraining order against her.

In addition, defense counsel proffered, without dispute by the prosecutor, that defendant had "no telephonic or face-to-face contact with [his mother]" and "doesn't even know where to go find her"; defendant lived in the same home as the victim "until a couple of years ago" and "no further problems apparently ... have been alleged"; and defendant is involved in the lives of his

three biological children and has had "constant contact" with them despite no longer living in the same household.

The nature and circumstances of the offense are pertinent to whether the statutory presumption of release has been overcome. However, the court based its detention decision almost entirely upon the offense charged, even though that charge does not carry a presumption of detention. See N.J.S.A. 2A:162–18(b). The court also relied on unsupported conclusory statements by the prosecutor to establish risk of obstruction even though there was no evidence of defendant's obstructive conduct. As defense counsel noted, defendant lived in the same home as the victim "until a couple of years ago" and "no further problems apparently . . . have been alleged."

The court based defendant's risk of flight upon his dual U.S.–Canadian citizenship even though the evidence presented at the detention hearing was that defendant had "lived in New Jersey [for] almost his entire life" and that defendant has no ties to Canada because he has no contact with his biological mother and does not know where she lives.

In summary, the trial court, in ordering defendant detained, failed to properly consider defendant's characteristics as he stood before the court. Furthermore, the trial court relied upon general, conclusory statements put forward by the prosecutor at the detention hearing. For example, at the detention hearing, the prosecutor asserted in a conclusory fashion that defendant's dual citizenship created a risk of flight and that because defendant knows where the victim and her mother live "the fear is that if he's released, he will harm them physically." Lastly, the prosecutor stated, without factual support, that "[t]hese sorts of cases are sensitive" because "defendant has access to the victim and other family members" and that "it's common sense . . . that the defendant often tries to obstruct justice by trying to convince family members and other people in the family to say it didn't happen, or put pressure on the victim." Because the court's detention decision

does not set forth articulable facts supporting its exercise of judicial discretion, it is not entitled to deference.

We are thus constrained to find that the evidence at the detention hearing did not overcome the CJRA's presumption of release. The trial court's detention decision constituted an abuse of discretion because it "rest[s] on an impermissible basis," "was based upon a consideration of irrelevant or inappropriate factors," "fail[ed] to take into consideration all relevant factors," including defendant's characteristics as he stood before the court, and "reflects a clear error in judgment." C.W., 449 N.J. Super. at 255, 156 A.3d 1088 (first alteration in original) (internal citations omitted).

Having determined that the trial court abused its discretion by detaining defendant, the next appropriate procedural step is to remand the matter to the trial court to determine the suitable conditions of release. Remand is required because the trial court has the opportunity at a detention hearing to "hear and see witnesses" and gain a " 'feel' of the case which a reviewing court cannot enjoy." Johnson, 42 N.J. at 161, 199 A.2d 809. Trial courts are therefore better positioned to determine conditions of release.

## V.

For the reasons set forth above, we affirm as modified the judgment of the Appellate Division and remand to the trial court for a hearing to determine the appropriate conditions of release.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ–VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.